# In the United States Court of Federal Claims

**No. 08-331C**
**(Filed: May 5, 2009)**

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * | * |
| | * |
| **CENTRAL FREIGHT LINES,** | * |
| **INC.,** | * |
| | * **RCFC 12(b)(1); Contract Carrier;** |
| **Plaintiff,** | * **Government Bills of Lading; Straight** |
| | * **Bills of Lading; Rights and Remedies** |
| **v.** | * **of Subcontractors; 49 U.S.C. § 13706;** |
| | * **41 C.F.R. § 102-118.35** |
| **THE UNITED STATES,** | * |
| | * |
| **Defendant.** | * |
| | * |
| * * * * * * * * * * * * * * * * * * | |

*J. W. Taylor,* Orlando, FL, for plaintiff.

*Courtney E. Sheehan,* U.S. Department of Justice, Washington, DC, with whom were *Gregory G. Katsas,* Assistant Attorney General, and *Jeanne E. Davidson,* Director, for defendant.

**O P I N I O N**

**FIRESTONE**, *Judge*.

This case comes before the court on the defendant's motion to dismiss the plaintiff's complaint pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") for lack of subject matter jurisdiction. The plaintiff, Central Freight Lines, Inc. ("Central Freight" or "the plaintiff"), an interstate motor carrier, claims in this action that the United States Department of Defense ("DOD," "the

government," or "the defendant") breached contracts for transportation services by failing

to pay Central Freight $172,089.93 in charges.  For the reasons discussed below, the

government's motion to dismiss is **GRANTED.**

## I.    BACKGROUND FACTS

The following background facts are taken from the pleadings and are undisputed

unless otherwise noted.  This case involves shipments of crated household goods, known

in the industry as "Freight All Kinds" ("FAK"), belonging to DOD personnel transported

pursuant to government bills of lading.  A government bill of lading ("GBL") is a contract

between the government and a DOD-approved carrier by which the government accepts

the carrier's offer to perform transportation services at a set cost.  In order to contract

with the government, the carrier must be a pre-qualified transportation service provider

("TSP").

In this case, the DOD, through the Military Surface Deployment and Distribution

Command ("SDDC"),[1] issued a series of GBLs to Dispatch Services, Inc. ("Dispatch")

for trucking services, including the transportation of FAK belonging to DOD employees.

Dispatch was registered as a TSP for FAK but was not registered with the SDDC as a

broker during the period at issue.  The GBLs identify Dispatch as a provider of motor

carrier services, not broker services.  Dispatch then entered into subcontracts with the

---

[1]The SDDC is a component of the DOD and is responsible through either the Personal
Property Directorate or the Domestic Business Requirements Section for coordinating the
transport of household goods or FAK, respectively.

plaintiff under straight bills of lading ("SBLs").  None of the SBLs incorporated any

provisions of the GBLs between the government and Dispatch.  Approximately 1,300

SBLs were issued between June 2005 and May 2006.  All of the SBLs list "Dispatch

Services, Inc." as the party to be billed.  See Ex. A to Ptf.'s Supp. Br.  The defendant

avers, and the plaintiff does not dispute, that the DOD paid Dispatch the full amount due

under the GBLs for the period at issue.  However, it appears that Dispatch did not pay

Central Freight for the transportation services it provided.  Dispatch has since gone out of

business.

Briefing was completed on March 3, 2009.[2]  Oral argument was deemed

unnecessary.

## II.    STANDARD OF REVIEW

RCFC 12(b)(1) governs the dismissal of claims for lack of subject matter

jurisdiction.  In reviewing a motion to dismiss, "[f]actual allegations must be enough to

raise a right to relief above the speculative level, on the assumption that all the allegations

in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v. Twombly, 550

U.S. 554, 555 (2007) (internal citations omitted); see also Holley v. United States, 124

F.3d 1462, 1465 (Fed. Cir. 1997); Henke v. United States, 60 F.3d 795, 797 (Fed. Cir.

---

[2]In response to the court's order for supplemental briefing, the plaintiff filed copies of
over 1,300 SBLs between Dispatch and Central Freight.  Ptf.'s Supp. Br. at Ex A.  The defendant
also filed the declaration of Evert L. Bono III, Chief of the Domestic Business Requirements
Section of the SDDC, stating that while several GBLs were issued to Dispatch during the time
period in question, it could not be determined which of these related to the goods described in the
SBLs.  Def.'s Resp. to Ptf.'s Supp. Br. ("Def.'s Resp.") at Ex. B ("Bono Decl.") ¶¶ 15-17.

3

1995) ("[T]he court [is] obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor."). <u>See generally</u> <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), <u>abrogated on other grounds by</u> <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 814-15 (1982); <u>Reynolds v. Army & Air Force Exch. Serv.</u>, 846 F.2d 746, 747 (Fed. Cir. 1988). The plaintiff, however, bears the burden of establishing subject matter jurisdiction, <u>Alder Terrace, Inc. v. United States</u>, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (<u>citing</u> <u>McNutt v. Gen. Motors</u>, 298 U.S. 178, 189 (1936)), and must do so by a preponderance of the evidence. <u>Reynolds</u>, 846 F.2d at 748. Because jurisdiction is a threshold matter, a case can proceed no further if a court lacks jurisdiction to hear it. <u>See</u> <u>Arbaugh v. Y&H Corp.</u>, 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." (citation omitted)); <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 94 (1998). <u>See generally</u> <u>John R. Sand & Gravel v. United States</u>, 128 S. Ct. 750 (2008). It is well-settled that when the court considers a motion to dismiss for lack of subject matter jurisdiction, it may look beyond the pleadings and "inquire into jurisdictional facts" to determine whether jurisdiction exists. <u>Rocovich v. United States</u>, 933 F.2d 991, 993 (Fed. Cir. 1991).

## III.   DISCUSSION

### A.   Introduction

The Tucker Act, 28 U.S.C. § 1491(a)(1) (2000), grants the Court of Federal Claims

jurisdiction to hear any claim founded upon an express or implied-in-fact contract with the United States.  The Federal Circuit has held that in order "to maintain a cause of action pursuant to the Tucker Act that is based on a contract, <u>the contract must be between the plaintiff and the government</u>."  <u>Cienega Gardens v. United States</u>, 194 F.3d 1231, 1239 (Fed. Cir. 1998) (internal citation omitted) (emphasis added); <u>see</u> <u>Cent. Transp. Int'l, Inc. v. United States</u> ) ("<u>Central Transport</u>"), 63 Fed. Cl. 336, 338 (2004) (same) (<u>citing</u> <u>Chancellor Manor v. United States</u>, 194 F.3d 891, 899 (Fed. Cir. 2003) (noting longstanding rule that privity is required in contract cases under the Tucker Act)).  Privity between the plaintiff and the government "is a jurisdictional prerequisite for a contract claim because 'the government consents to be sued only by those with whom it has privity of contract.'"  <u>Globex Corp. v. United States</u>, 54 Fed. Cl. 343, 347 (2002) (<u>quoting</u> <u>Erickson Air Crane Co. v. United States</u>, 731 F.2d 810, 813 (Fed. Cir. 1984)).  "Absent privity between the plaintiff and the United States, there has been no waiver of sovereign immunity for a suit in contract."  <u>Central Transport</u>, 63 Fed. Cl. at 338.

### B.    No Contract Existed Between the Government and Central Freight.

The plaintiff asserts that this court has subject matter jurisdiction because its claims are predicated on contracts between the government and Central Freight.  The plaintiff argues that it should prevail on one of two alternative contract theories.  Firstly, the plaintiff argues that the SBLs establish direct privity of contract between the plaintiff and the government.  Alternatively, the plaintiff argues that the parties should be deemed

to be in privity of contract because Dispatch acted as an agent of the government when it entered into the SBL contracts with Central Freight, thus obliging the government to pay Central Freight regardless of whether or not it made payment to Dispatch.  Ptf.'s Supp. Br. at 8 (citing United States v. Johnson Controls, Inc., 713 F.2d 1541, 1549-50 (Fed. Cir. 1983)).

By way of background, a brief explanation of the contractual relationship between the government and a carrier is in order.  A contractual relationship between the government and a carrier is governed by a tender and a GBL.  Baggett Transp. Co. v. United States, 23 Cl. Ct. 263, 265 (1991), aff'd, 969 F.2d 1028 (Fed. Cir. 1992) ("The terms of the contractual relationship between carrier and shipper consist of the tender and incorporated tariff, representing the offer, and the GBL and its annotations, representing the acceptance.").  As the Federal Circuit explained in Dalton v. Sherwood Van Lines, Inc., 50 F.3d 1014, 1016 (Fed. Cir. 1995), "[A GBL is] a document used by the government when acquiring freight transportation services from common carriers.  Each GBL [is a] contract between the parties, establishing their respective rights with regard to the transportation services procured and provided."  (quoted in Central Transport, 63 Fed. Cl. at 338).  "Thus, a GBL establishes privity between the carrier and the Government." Central Transport, 63 Fed. Cl. 338.  However, it is well-established that "subcontractors normally are not in privity with the Government" except where "the prime contractor is a mere government agent."  Johnson Controls, 713 F.2d at 1550, 1551.  In the absence of

such agency, courts have routinely held that a subcontractor has no standing or

contractual cause of action to sue the government.  See, e.g., Johnson Controls, 713 F.2d

at 1550 (denying claim brought by a subcontractor); Central Transport, 63 Fed. Cl. at

338-39 (denying claim brought by subcontractor to a subcontractor).  Tested by these

standards, the plaintiff's contract claim must be dismissed.

        **1.     Neither the GBLs Nor the SBLs Establish Privity of Contract<br>               Between Central Freight and the Government.**

The plaintiff argues that express contracts existed between Central Freight and the

government for the transportation services the plaintiff provided.  Central Freight asserts,

"A contract between the government and the carrier forms each time the government

accepts the carrier's transportation services with the carrier's bill of lading," Ptf.'s Supp.

Br. at 5 (citing Central Transport, 63 Fed. Cl. at 338), and that "[t]he Bills of Lading in

this case establish express contracts between the DOD and Central Freight Lines."[3]  Id.

The plaintiff states that

> Central Freight Lines is named as carrier in the Bills of Lading.  Compare
> Central Transp[ort], 63 Fed. Cl. at 338 (no privity where carrier is not named
> on the bill of lading).  The DOD is listed as consignee on the Bills of Lading.
> . . . As consignee and owner of goods transported by Central Freight Lines,
> DOD is liable for payment of the rates of transportation.  S[]. Pac[.] Transp.
> Co.[ v. Commercial Metals Co.], 456 U.S. [336,] 343 [(1982)]; 49 U.S.C. §
> 13706 [(1995)].

Id. at 5-6.

---

    [3]Although the plaintiff does not specify whether the bills of lading to which it refers are
the GBLs or the SBLs, it is clear from the context that the plaintiff is referring to the SBLs.

In response, the government asserts that "[i]n merely contending that a bill of lading establishes privity of contract between the government and motor carrier, Central [Freight] is attempting to deliberately obscure an important distinction between a <u>government</u> bill of lading and a straight bill of lading. . . ."  Def.'s Resp. at 4 (emphasis in original) (citation and internal quotation marks omitted).  The government argues that while it had contracts in the form of GBLs with Dispatch for delivery of the goods that Central Freight ultimately delivered, the government was not a party to the SBLs between Dispatch and Central Freight and therefore had no contractual relationship with the plaintiff.  The government states, "To establish the existence of either an express or implied-in-fact contract, Central [Freight] must demonstrate: (1) mutual intent to contract; (2) consideration; (3) lack of ambiguity in an offer and acceptance; and (4) actual authority on the part of the Government representative to bind the United States in contract."  Def.'s Resp. at 6 (<u>citing</u> <u>Harbert/Lummus Agrifuels Projects v. United States</u>, 142 F.3d 1429, 1434 (Fed. Cir. 1998); <u>City of El Centro v. United States</u>, 922 F.2d 816, 820 (Fed. Cir. 1990)).  The government contends that the plaintiff has failed to demonstrate the existence of any of these required elements.

This court agrees with the government that Central Freight has not established that it had an express or implied-in-fact contract with the United States.  While the plaintiff has supplied this court with over 1,300 SBLs between itself and Dispatch, the SBLs fail to establish a contractual relationship between the government and Central Freight.  <u>See</u>

Ptf.'s Supp. Br. at Ex. A.  Although, as discussed below, the plaintiff claims that Dispatch was acting as a broker and agent of the government when Dispatch contracted with Central Freight, the plaintiff has not presented evidence sufficient to establish that Dispatch had actual authority to bind the United States in contract.  See City of El Centro, 922 F.2d at 820 ("When the United States is a party, a fourth requirement is added: the Government representative 'whose conduct is relied upon must have actual authority to bind the government in contract.'" (quoting Juda v. United States, 6 Cl. Ct. 441, 452 (1984) (further citations omitted))).  No signature of an SDDC employee, other DOD employee, or any other government representative appears on the SBLs.  Furthermore, the plaintiff does not claim to be a party to the GBLs, nor to even be mentioned on them.  In short, drawing all reasonable inferences in favor of the plaintiff, Central Freight has failed to raise a right of relief above the speculative level.  See Twombly, 550 U.S. at 555.

> **2.      Dispatch Was Not Acting as an Agent of the United States When It Contracted with Central Freight.**

The plaintiff also argues that this court should find "deemed privity" of contract between Central Freight and the government.  In support, the plaintiff cites Johnson Controls, 713 F.2d at 1549-50.  In Johnson Controls, the Federal Circuit held that, as an exception to the general rule that subcontractors are not in privity of contract with the government, the government may be deemed to be in privity of contract with a subcontractor where the prime contractor was "(1) acting as a purchasing agent for the government, (2) the agency relationship between the government and the prime contractor

was established by clear contractual consent, and (3) the contract stated that the government would be directly liable to the vendors for the purchase price." Johnson Controls, 713 F.2d at 1551 (citations omitted) (emphasis in original); see also Central Transport, 63 Fed. Cl. at 339 n.8 (enumerating the Johnson Controls factors but finding no basis for deemed privity); Globex Corp., 54 Fed. Cl. at 347-48 (same). The plaintiff argues that all three factors identified in Johnson Controls are present. Firstly, claims the plaintiff, Dispatch was acting as a purchasing agent for the government "as evidenced by its role in soliciting transportation arrangements from Central Freight Lines, and by the very definition of 'brokers' under 49 U.S.C. § 13102(2) [(2002) ("Section 13102(2))"]."[4] Ptf.'s Supp. Br. at 8. Secondly, argues Central Freight, "the DOD consented to the contractual relationship with Dispatch Services as evidenced by the Bills of Lading." Id. Finally, the plaintiff claims that "the DOD, as a named party in the Bills of Lading, agreed to be liable for the freight charges by accepting the transportation services of Central Freight Lines." Id. at 8-9 (citing S. Pac. Transp. Co., 456 U.S. at 343; 49 U.S.C. § 13706).

In response, the government argues that the plaintiff misapplies the Johnson Controls test. The government argues that the fact that Dispatch subcontracted with Central Freight is insufficient to demonstrate that Dispatch acted as the government's

---

[4]Section 13102(2) defines "broker" for purposes of Title 49 as "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation."

purchasing agent.  The government notes that in his declaration, Mr. Bono "unequivocally stated that Dispatch was not authorized to act as a broker or agent of the Government." Def.'s Resp. at 8; Bono Decl. ¶¶ 8 ("from 1999 to 2009 Dispatch . . . had legal authority to operate only as a carrier, not a broker"), 9 ("Dispatch was not registered with SDDC as a broker during this period"), 12 ("None of the contract documents authorized Dispatch to act as an agent of DOD.").  Likewise, the government argues that the SBLs between Dispatch and Central Freight "fail[] to demonstrate that any agency relationship between Dispatch and the Government was established by 'clear contractual consent.'"  Def.'s Resp. at 8 (quoting Johnson Controls, 713 F.2d at 1551).  The government argues that "Central [Freight] has failed to establish that the United States was a party to the [SBLs]" and that "[i]n any event, nowhere in those bills of lading is any agency relationship even referenced."  Id.  Finally, the government argues that "Central [Freight] has failed to establish that any purported contract stated that the Government would be directly liable to . . . Central [Freight]" and adds that "as each bill of lading demonstrates, any bill for service was to be submitted to Dispatch, and nothing on the contract states or even implies that the United States agreed to pay Central [Freight] for any services."  Id.  Thus, argues the defendant, the plaintiff cannot establish that Dispatch was acting as a government agent, and the parties cannot be deemed to be in privity of contract.

The court agrees with the government that, for the reasons the government advances, the plaintiff has failed to satisfy any of the three Johnson Controls factors.  The

plaintiff has not pled jurisdictional facts sufficient to demonstrate that Dispatch was acting as a government agent when it subcontracted with Central Freight.  Indeed, Dispatch was not a registered broker with the DOD and did not possess actual authority to bind the government in contract.  Nowhere was an agency relationship between the government and Dispatch established by clear contractual consent.  See Bono Decl. ¶ 12 ("None of the contract documents authorized Dispatch to act as an agent of DOD.").  Furthermore, as in Central Transport, the GBLs did not state that the government would be directly liable to the plaintiff for the charges of shipping the goods.  See Central Transport, 63 Fed. Cl. at 339 n.8.  As was the plaintiff's situation in that case, Central Freight was never mentioned in any GBL.  See id.  Additionally, each SBL listed Dispatch as the sole party to be billed.  Ptf.'s Supp. Br. at Ex. A; see Central Transport, 63 Fed. Cl. at 339 n.8.  Therefore, this court finds no basis to deem the parties to be in privity of contract.

**C.     Neither 49 U.S.C. § 13706 Nor 41 C.F.R. § 102-118.35 Provides Jurisdiction.**

As an alternative to a contractual basis for Tucker Act jurisdiction, the plaintiff asserts that 49 U.S.C. § 13706 ("Section 13706") provides a statutory basis for jurisdiction.  Section 13706 governs the liability of consignees for shipping charges incurred by a common carrier.  In its response to the defendant's motion to dismiss, the plaintiff cites Fikse & Co. v. United States, 23 Cl. Ct. 200, (1991), for the proposition that

12

Section 13706[5] imposes liability where transportation services are provided by a common carrier. Ptf.'s Resp. at 4 (citing Fikse, 23 Cl. Ct. at 203, 204). The plaintiff argues that "[a]t all times material, Plaintiff . . . was a common carrier. Therefore, under the analysis of Fi[ks]e and the general rule of the Fi[ks]e court, that is, that liability may lie where transportation is provided by a common carrier, Plaintiff has sufficiently ple[d] a cause of action against the DOD." Ptf.'s Resp. at 4.

In response, the government argues that Section 13706 is inapplicable because "[i]n this case, Central [Freight] was clearly not acting in the capacity of a common carrier. Rather, as the [SBLs] demonstrate, Central [Freight] was providing services to Dispatch pursuant to a contract with Dispatch, not the United States." Def.'s Resp. at 4 (internal quotation marks removed). The defendant notes that the Fikse court held that Section 13706 "was not intended to 'create liability in the consignee in the face of an express contractual allocation elsewhere of freight charges.'" Id. (quoting Fikse, 23 Cl. Ct. at 204 (citing-in-turn In re Roll Form Prods., 662 F.2d 150, 153-54 (2d Cir. 1981) ("The Interstate Commerce Act . . . was not intended to 'fashion a sword' to insure collection by carriers of freight charges[ n]or . . . to impose an absolute liability upon consignees for freight charges." (internal brackets removed)); Consol. Freightways Corp. v. Admiral Corp., 442 F.2d 56, 62 (7th Cir. 1971); In re Penn-Dixie Steel Corp., 6 B.R. 817, 820 (S.D.N.Y. 1980), aff'd, 10 B.R. 878 (S.D.N.Y. 1981); S. Pac. Transp. Co. v.

_____

[5]At the time of the Fikse decision, Section 13706 was codified at 49 U.S.C. § 10744 (1989).

Campbell Soup Co., 455 F.2d 1219, 1220-22 (8th Cir. 1972) (the principal purpose of the

Interstate Commerce Act was to eliminate all forms of rate discrimination on interstate

shipments)).  Additionally, the government argues that Section 13706 does not provide a

basis for jurisdiction where the subcontractor and the government are not in privity of

contract.

Faced with the government's argument that the plaintiff was not acting as a

common carrier, the plaintiff argues that Section 13706 does not "limit its application to

common carriers," and therefore, "whether Central Freight[] Lines is a common or

contract carrier is inapposite."  Ptf.'s Reply at 4, 5.  The plaintiff asserts that "Congress

no longer recognizes a distinction between common and contract carriers," and cites 49

U.S.C. § 13902(f)(2)[6] (2005) in support of this proposition.  In the alternative, the

---

[6] 49 U.S.C. § 13902(f)(2) states:

Pre-existing certificates and permits.--The Secretary shall redesignate any motor
carrier certificate or permit issued before the transition termination date as a motor
carrier certificate of registration. On and after the transition termination date, any
person holding a motor carrier certificate of registration redesignated under this
paragraph may provide both contract carriage (as defined in section 13102(4)(B)) and
transportation under terms and conditions meeting the requirements of section
13710(a)(1). The Secretary may not, pursuant to any regulation or form issued before
or after the transition termination date, make any distinction among holders of motor
carrier certificates of registration on the basis of whether the holder would have been
classified as a common carrier or as a contract carrier under--

(A) subsection (d) of this section, as that section was in effect before the transition
termination date; or

(B) any other provision of this title that was in effect before the transition termination
date.

plaintiff argues that "[e]ven assuming the distinction was relevant, Central Freight Lines is a common carrier under the old common law test because though there were many bills of lading, there was no single contract governing the shipments tendered by DOD."  Ptf.'s Reply at 5 (citing Fikse, 23 Cl. Ct. at 203).

This court adopts the reasoning expressed by Judge Williams in Central Transport and holds that Section 13706 does not "dispense with the necessity of establishing privity of contract with the Government in order to establish jurisdiction under the Tucker Act." 63 Fed. Cl. at 340 n.10 (citing Fikse, 23 Cl. Ct. at 204; In re Roll Form Prods., 662 F.2d at 154 ("The ICA, in our view, was not intended to 'fashion a sword' to insure collection by carriers of freight charges." (internal brackets omitted)); S & B Transp., Inc. v. Allou Distribs., Inc., 41 F. Supp. 2d 388, 391-92 (E.D.N.Y. 1999) (holding that Section 13706 does not confer federal subject matter jurisdiction over disputes involving independent brokerage contracts between broker and shipper)).  While the plaintiff attempts to distinguish Central Transport by arguing that "in Central Transport[], the contract carrier was a sub-sub-contractor . . . . [while i]n the instant matter, the Plaintiff is at best[] a sub-contractor," Ptf.'s Resp. at 4, this court finds this to be a distinction without a difference. Section 13706 provides no basis for jurisdiction between the government and a subcontractor of any level, be it a subcontractor, a "sub-sub-contractor," or a "sub-sub-sub-contractor."

In the alternative, the court agrees with the defendant that under the court's

15

holding in <u>Fikse</u>, Section 13706 does not create liability in the consignee for shipping

charges where there is a contract allocating these charges elsewhere.  See <u>Fikse</u>, 23 Cl.

Ct. at 204.  Regardless of whether the carrier is deemed a "common" or "contract" carrier,

the salient fact is whether or not a contract exists allocating shipping charges.  As such a

contract exists here and allocates shipping charges to Dispatch, Section 13706 does not

apply and, therefore, provides no basis for this court's exercise of jurisdiction.

The plaintiff also cites 41 C.F.R. § 102-118.35 (2004), which defines a TSP as

"any party, person, agent, or carrier that provides freight or passenger transportation and

related services to an agency," as a basis for jurisdiction on the theory that it dispenses

with the requirement of privity of contract.  Ptf.'s Resp. at 4-5.  In <u>Central Transport</u>,

Judge Williams noted that 41 C.F.R. § 102-118.35 "does not imbue a TSP, which is a

subcontractor, with the right to recover payment from the Government for services

provided in the absence of a contract between the Government and that party."  63 Fed.

Cl. at 340.  As Judge Williams explained, this interpretation of the regulation is supported

by a more specific provision in the regulation, found at 41 C.F.R. § 102-118.205 (2004),

which contains the following question and answer:

> May my agency pay a subcontractor or agent functioning as a warehouseman
> for the TSP providing service under the bill of lading?
>
> No, your agency may only pay the TSP <u>with whom it has a contract</u>.  The bill
> of lading <u>will list the TSP with whom the Government has a contract</u>.

(emphasis added).  Here, there is no dispute that Dispatch is the TSP with whom the

government has a contract.  Therefore, the latter regulation makes it clear that the former

does not support recovery in the absence of a contract between the government and the

subcontractor.

Additionally, as Judge Williams notes, "the Government is not made liable, by

implication, for payment to Plaintiff when it is clear from the face of each SBL that

[another party was] expressly obligated to pay."  Central Transport, 63 Fed. Cl. at 340

(emphasis in original) (citing Fikse, 23 Cl. Ct. at 204 ([N]o implication of an agreement

to pay could arise by acceptance in view of the express provisions obligating [the non-

government entity that contracted with the plaintiff] to pay shipping charges")).  Here, it

is not disputed that the express terms of the SBLs obligated only Dispatch to pay the

plaintiff.  Thus, neither Section 13706 nor 41 C.F.R. § 102-118.35 provide a basis for this

court's exercise of jurisdiction.[7,8]

---

[7]Similarly, this court also rejects the plaintiff's argument that 49 U.S.C. § 13101 (1995), which sets forth broad transportation policy goals, provides a basis for Tucker Act jurisdiction. A statute "need not explicitly provide that the right or duty it creates is enforceable through a suit for damages, but it triggers liability only if it can fairly be interpreted as mandating compensation by the Federal Government."  United States v. Navajo Nation, 129 S. Ct. 1547, 1552 (2009) (citations and internal quotation marks omitted); see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003) (A federal statute grants this court subject matter jurisdiction only if it "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." (citations and internal quotation marks omitted)).  As no part of 49 U.S.C. § 13101 can be fairly interpreted as mandating compensation, this court holds that this statute provides no basis for jurisdiction.

[8]As a final matter, the plaintiff argues in the alternative that it is entitled to recover for unjust enrichment. Ptf.'s Supp. Br. at 9 (citing Perri v. United States, 340 F.3d 1337, 1344 (Fed. Cir. 2003); Prestex, Inc. v. United States, 162 Ct. Cl. 620 (1963)).  As the government asserts, a claim of unjust enrichment is equitable in nature and is not based on a contractual relationship. Def.'s Resp. at 9 (citing Enron Fed. Solutions, Inc. v. United States, 80 Fed. Cl. 382, 409 (2008)

**IV.     Conclusion**

For the foregoing reasons, the defendant's motion to dismiss is **GRANTED**.  The

Clerk is directed to enter judgment accordingly.  Each party is to bear its own costs.

s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge

---

(further citation omitted)).  Such a claim "is therefore based upon a contract implied in law, over which this court has not been given jurisdiction."  Id.  Therefore, the plaintiff's unjust enrichment claim does not provide this court with subject matter jurisdiction.